AMERICAN LOAN & TRUST CO. *v.* TOLEDO, C. & S. RY. CO. and others.

*(Circuit Court, N. D. Ohio.  December 6, 1886.)*

1. RAILROAD COMPANIES—FORECLOSURE OF MORTGAGE—APPOINTING RECEIVERS.
    Although there has been default in the payment of the interest coupons secured by a railroad mortgage, yet, if it appear that there is a fair and reasonable claim by the defendant company, growing out of contemporaneous contracts, that the time of payment has been extended, or that the plaintiffs are precluded from relying on the default,—a receiver will not be appointed, until the court shall determine that the right of foreclosure exists.

2. SAME—MISMANAGEMENT OF PROPERTY BY MORTGAGOR.
    The mere disagreements of the parties as to the management of the property furnish no foundation for the appointment of a receiver.  That can only be done as an incident to some relief falling within the jurisdiction of the court in relation to the contracts of the parties.  The appointment of a receiver simply to manage the property is not within the power of a court of equity.

In Equity.  On motion for the appointment of receivers.

The defendant Brown, being largely interested in a railroad then undergoing foreclosure in this court, entered into negotiations in New York with the American Finance Company, J. B. Mason, and F. G. Jillson for the purpose of raising the money to re-establish the enterprise.  These negotiations resulted in a contract between Brown and the American Finance Company whereby the latter undertook, for certain considerations, to raise the necessary funds to relieve the property, reorganize it under a new company which should operate the road already built, connect it with another road near to it, secure certain terminal facilities, and extend it to the Ohio river.  The scheme comprehended the issuance of stock and bonds at so much of each per mile, a mortgage to secure the bonds, etc.  Mason and Jillson agreed to lend the money immediately required to relieve the property from the pending suit to foreclose.  This transaction, by what is called a tripartite agreement between Brown, the American Finance Company, and Mason and Jillson, took the form of a loan by the latter to Brown upon his notes, secured by the deposit as collateral, of his securities in the old company, to be substituted however by the securities in the new company when organized.  In this way over $300,000 was realized in cash, and the parties proceeded to carry out the scheme of reorganization.  Brown went into control of the new enterprise, as it was contemplated he should, but subsequently the parties disagreed, and a struggle commenced for a control of the directory.  Injunction suits were instituted, and Brown maintained his control, the bill charges, by fraudulent practices.  This struggle depended upon a disputed right on each side to vote the collateral stock.  Subsequently this bill was filed by the trustee in the mortgage, and asked the appointment of a receiver, and an injunction against negotiating any further bonds.  It charges Brown and his associates with fraudulently obtaining control of the election

for directors, with fraudulent traffic mismanagement in the interest of rival companies, with neglect to secure the terminal facilities and to extend the road, with misappropriation of the earnings, with making default in the payment of the interest coupons, and that he is wholly insolvent and unreliable. The answers of Brown and the company deny all these charges, set up counter-allegations of bad faith, and rely upon the contracts accompanying the mortgage to show that there has been under them no default in the payment of interest, and cannot be until his notes become due to Mason and Jillson. Numerous affidavits on both sides are filed relating to the management of the road and the conduct of the parties under these contracts. The case was heard before WELKER and HAMMOND, JJ., on a motion to appoint a receiver.

*S. A. Bowman* and *R. A. Harrison,* for plaintiff.

*Doyle & Scott* and *Burke, Ingersoll & Sanders,* for defendants.

HAMMOND, J. The impressions made at the argument that this case does not present a state of facts justifying the appointment of a receiver have not been removed by a more careful consideration of the subject upon the elaborate printed briefs which have been filed. Undoubtedly there are cases where a court of equity may take hold of mortgaged property before default in the condition of the mortgage and protect the security against impending danger from fraudulent management, but this is not one of them. It would be intolerable to extend that principle so as to transfer to a court of equity every controversy over the management of mortgaged property, or to convert those courts into the supervisors of the control of every corporation where property is pledged to secure its mortgage debts. Take one feature of this case, dependent on the question whether it be wise to construct that extension of the railroad which was in contemplation of the parties to this mortgage and the other contracts connected with it, as a simple example. That involves a matter of discretion in the judicious management of the property which properly belongs to the directors in charge of the company, and it is not the function of a court of equity to direct the exercise of that discretion upon any judgment of the court that the extension should or should not be made. The court, as to that, may be no wiser than the directors, and the complainants no wiser than either. If loss occurs to the mortgagees from unwise action in that regard, it is one of the inevitable results of the mismanagement of property by its owners, and the remedy is not, certainly, to be found in usurpations of control by the court, through a receiver or otherwise.

But it is said the management is influenced improperly by the persuasive manipulations of a rival enterprise. This is a suspicion of bad faith that may be well or ill founded, but we do not see why a court of equity should, even if it be true, assume to determine either that the extension should or should not be made through the process

of appointing a receiver and undertaking the control of the property. This is an extension of the uses of courts beyond any reasonable limits, and a dangerous application of their power. Under that doctrine the whole business of building railroads might be readily committed to the courts of equity, and in the end, perhaps, be more disastrously managed. But if it be conceded that a court of equity should interfere for relief in such cases, it seems to us that the proper remedy would be by a bill either to rescind the contract for the fraudulent breach of it, or else to compel its specific performance, if that were possible. This bill as originally constructed did not pray for any such relief or make any other appeal to the equitable considerations that govern the rights of the plaintiff in relation to its contracts with the defendants. It simply asked for the appointment of a receiver who should manage the property and pay the mortgage debt according to the terms of the contracts. It did not ask us to complete the extension, or to execute the other stipulations of the contract, or to compel the defendant company to do so; nor did it ask to rescind it, nor yet to sell the road and foreclose the mortgage. It seemed to proceed on the theory that it is the right of dissatisfied creditors to have a receiver whenever the management of the property does not suit them. We do not understand the law to be so. Whatever may be the powers of a court of equity to construct railroads or to manage them through receivers, in form at least, those powers must be exercised as an adjunct to the jurisdiction of enforcing some of the well understood equitable rights of the parties in relation to their contracts. There is no such branch of equitable jurisprudence as the appointment of railroad receivers for the management of the property upon any and every disagreement of those interested as to the proper conduct of the business.

It is not wonderful that creditors imagine they are entitled to such relief, nor that disappointed speculators suppose there is such a method of mitigating their losses or correcting their mistakes of contract, considering the strides that have been made in using the courts for such schemes; but the case must fall within some one of the departments of equitable jurisprudence to entitle us to entertain it, whatever we may do after we get hold of it.

On this suggestion of a defect in the bill the prayer was amended, and it now assumes the form of a bill to foreclose a mortgage upon default of payment of interest. Now, in this form, we cannot and should not proceed to rescind the contract, or to reform it, or to specifically execute it, or to substitute one board of directors for another, or to give guidance to the existing directory, or to transfer the management of the property to others who would like to be in charge, or, indeed, to do anything concerning it—appointing a receiver in the mean time— which the plaintiff would like to have done with it. We can only look at the suit as a bill to foreclose a mortgage, and nothing else, whatever the facts might, on a bill filed for some other purpose, justify. The difficulty of maintaining any other relief than

to rescind the contracts for the alleged frauds is manifest in reading the allegations of the bill and the contracts of the parties. As a bill to foreclose a mortgage the circumstance appears that, substantially, that is not really the ground of complaint, but dissatisfaction with the management of the road, disappointment in not being able to control the directory, or further back, a realization that the contract may not be as wise as it was supposed to have been, nor as carefully guarded to secure the interests of plaintiff's beneficiaries, as, perhaps, it might have been. But it is plain that a court of equity will not on such grounds as those take control of the property, and manage it through a receiver. If plaintiff has been overreached by fraud, possibly a bill to cancel the transaction would lie, possibly a bill to control the action of the company's directory, if there be any ground for that, but certainly not a bill to foreclose a mortgage not broken in its conditions when the bill was filed. And, as to occurrences since, there have been filed affidavits and counter-affidavits concerning the non-payment of Brown's notes in New York, but they do not alter the situation, since, if anything can be asked because of these occurrences, they must be pleaded by amended or supplemental bill.

This requirement of the case relieves us largely of the necessity of considering the force of the allegations of the bill in respect of any other relief than that which is asked, and confines us to those which are material to the subject of a foreclosure of the mortgage, and the determination of the dispute whether, as a fact, there has been such a breach of its conditions as entitles the plaintiff to a foreclosure. But before going to that we may say that, while we have conceded the general proposition, that a court of equity will sometimes interfere by injunction to prevent a waste or destruction of the mortgaged property before the conditions of the instrument have been broken and a right to foreclose accrued, it does not thereby result that the court will appoint a receiver to manage the property until the mortgage can be foreclosed. That would come to the assumption of the management by the court of all mortgaged property where there was deterioration or fear of it. But in this case it is sufficient to say that, aside from disagreements as to the best mode of managing the property, there is no substantial charge of a waste of it; the controversy about the cross-ties, like the others, being a mere suggestion as to the better management of the affairs of the company, and at most too insignificant in its character to be applicable in support of this motion for a receiver. All this character of allegations in the bill amount to protests against the management of the company under its present control, and are such as a critical business judgment might make against the management of almost any railroad enterprise,—a mere conflict of opinions as to business operations.

We come now to the question whether there has been a breach of the conditions of the mortgage, so that the plaintiff is entitled to fore-

close it.   It cannot be denied that the interest due upon the coupons has been in default, and strictly according to the terms of the mortgage there has been a breach of its conditions.   But there are other facts connected with this, which, if they do not excuse that breach and amount to an extension of payment of the coupons, certainly furnish abundant reason for a refusal by a court of equity to appoint a receiver pending the dispute whether the plaintiff is entitled to a foreclosure because of it.   Indeed, the very existence of a reasonable dispute as to whether the conditions of the mortgage have been broken is sufficient to cause the court to refuse a receiver; for one ought not, ordinarily, to be appointed unless the right of foreclosure is clear and indisputable, and this upon the general ground that one lawfully and by the contract of parties in possession of the property should not be disturbed in that possession except in a clear case of a right to do that.   These railroad mortgages provide for this, as does that in this case, by enabling the bondholders to take possession, upon default, through a trustee; and while this is only cumulative to the remedy in equity, the existence of that provision in itself furnishes the main ground for the appointment of a receiver by the court on a bill to foreclose, for otherwise it is not an absolute right to dispossess the company pending a bill to foreclose.   It is generally done because this and other stipulations of the mortgage, together with the fact that default itself evidences bad management and the necessity for a change of possession, justify it; but still the appointment of a receiver is not a matter of course in all cases upon a default and a bill to foreclose, nor if it appear that the company may excuse the default, or the plaintiff be estopped by contract or otherwise from relying on it.   There, other considerations come into play, and the court should generally not disturb the possession until the right of foreclosure has been established at the hearing.   It is, therefore, not only unnecessary, but improper, that on this motion, upon proof by affidavits and counter-affidavits only, we should undertake to construe these contracts, and say now that the plaintiff is entitled to a foreclosure, and by consequence of that to a receiver, preliminary to a decree of sale and foreclosure.   It is sufficient here to say that by reason of the stipulations of the tripartite agreement, it may be fairly claimed by defendants that no default has taken place by the mere failure to pay the coupons, but that under those stipulations the right of payment has been extended by the plaintiff, or those it represents.   The plaintiff denies this construction, and says that the contracts taken all together do not mean that; but we think the case presents a reasonable controversy over that point, and, until it is settled, we should not appoint a receiver, particularly since the plaintiff may renew the motion at any time if subsequently occurring facts have made it justifiable to do so, and the order overruling this motion will reserve to plaintiff the right to renew it.

We come to this conclusion the more readily because we can see

from the frame-work of this bill, the absence, originally, of any prayer to foreclose, the course of the argument, and the whole case, that plaintiff was driven to assume a right to foreclose as the best possible ground upon which to predicate the demand for a receiver; the real objection being dissatisfaction with its contract, as subsequent events developed its weakness, and its purpose and endeavor to escape the consequences of a misadventure in getting control of the enterprise. Railroad mortgages are sometimes used as an instrumentality of adventurous speculation rather than a safe security for money advanced, and while the courts should use every possible endeavor to save to the utmost the value of the security, when properly called on to do so, they should not suffer themselves to become likewise an instrumentality of adventurous speculators seeking to use the courts as weapons of offense in the warfare that goes on among themselves. Courts should be confined strictly to the domain of courts of law and equity engaged only in the busines of settling, according to the established rules of law and equity, the controversies that arise and come within the workshop of jurisprudence, but not those that lie outside and within the arena of gladiatorial struggles for business advantages and speculations. The plaintiff here does not like—and perhaps is alarmed, possibly, not without cause, at—the conduct of their joint enterprise by the defendants; but that dislike and alarm do not furnish any solid basis of interference by a court to appoint a receiver to quiet that alarm. We cannot look only to the mortgage, and shut our eyes to the other contracts and transactions between the parties from which it appears that they were joint adventurers in an enterprise of which this mortgage contains only a part of the agreements and stipulations. Looking at them all, we do not find that the plaintiff is certainly now entitled to foreclose the mortgage, and to a receiver pending that foreclosure.

Motion denied.