Day, J.
 

 The appointment of receivers is regulated in this state by statute. Section 11894, General Code, provides:
 

 UA
 
 receiver may be appointed by the Supreme Court or a judge thereof, the Court of Appeals, or a judge thereof in his district, the common pleas court or a judge thereof in his district, or the probate court, in causes pending in such courts respectively, in the following cases:
 

 “1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest
 
 *172
 
 in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed or materially injured;
 

 “2. In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt;
 

 “3. After judgment, to carry the judgment into effect;
 

 “4. After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution. has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;
 

 “5. In the cases provided in this title, and by special statutes when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;
 

 “6. In all other cases in which receivers heretofore have been appointed by the usages of equity.”
 

 The sixth subdivision of said section necessitates an' inquiry into the rule “when the usages of equity” have permitted the appointment of receivers.
 

 The jurisdiction of courts of equity and the power to appoint receivers is of very ancient origin. Its history is traced in England and in
 
 *173
 
 this country in Clark on Receivers, Yol. 1; Sections 4 to 10, inclusive, to which reference is made.
 

 “The appointment of a receiver is not an equitable right hut an equitable remedy; therefore the appointment of a receiver is not a cause of action in itself, hut the appointment of a receiver is an act of the court ancillary to proceedings for the establishment of some right.
 

 “The appointment of a receiver being an interlocutory decree is therefore a temporary expedient, and provisional to some other or final determination of the matter by the court. * * * It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right.” Clark on Receivers, Sections 35 and 36.
 

 See
 
 Phoenix Oil Co.
 
 v.
 
 McLarren,
 
 (Tex. Civ. App.), 244 S. W., 830;
 
 United North & South Oil Co.
 
 v.
 
 Meredith,
 
 (Tex. Civ. App.), 258 S. W., 550;
 
 Doggett
 
 v.
 
 Johnson,
 
 72 Mont., 443, 234 P., 252. The Montana statute contains the same provision as paragraph 6 of Section 11894, General Code.
 
 Allen
 
 v.
 
 Montana Refining Co.,
 
 71 Mont., 105, 227 P., 582;
 
 In re Richardson’s Estate,
 
 (D. C.), 294 F., 349; 23 Ruling Case Law, 11 and 12; 34 Cyc., 29;
 
 Myers
 
 v.
 
 Occidental Oil Corp.,
 
 (D. C.), 288 F., 997, 1001;
 
 Grays Harbor Commercial Co.
 
 v.
 
 Fifer,
 
 97 Wash., 380, 166 P., 770;
 
 City of Parsons
 
 v.
 
 Parsons Water Supply & Power Co.,
 
 104 Kan., 294, 178 P., 438;
 
 Kokernot
 
 v.
 
 Roos,
 
 (Tex. Civ. App.), 189 S. W., 505;
 
 Alto Cotton Oil (& Mfg. Co.
 
 v.
 
 Berryman,
 
 (Tex. Civ. App.), 218 S. W., 513;
 
 Meyers Bros.
 
 v.
 
 Harman Bros.,
 
 78 W. Va., 460, 89 S. E., 146.
 

 
 *174
 
 From the foregoing, and many other authorities that might be cited, it is deducible that the appointment of a receiver is the exercise of an extraordinary, drastic, and sometimes harsh power which equity possesses, and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury. As said in Tardy’s Smith on Beceivers, (2d Ed.), Vol. 1, p. 26:
 

 “Following the principles appertaining to equity jurisprudence, it is a fundamental rule that a receiver will not be appointed if the plaintiff has a full and adequate remedy at law in respect to his alleged rights, or where the court can find another and less stringent remedy.”
 

 Especially is it to be noted that appointment of a receiver is merely ancillary to the main cause of action and incidental to the chief and ultimate relief sought, and can be invoked only in a pending suit brought to obtain relief which the court has power to grant. We are not unmindful that in some jurisdictions, under extreme and unusual circumstances, a court of equity may appoint receivers as the ultimate relief sought. However, the rule in Ohio, in view of the statutory provisions, does not permit the extension of the privilege to appoint receivers as the sole and ultimate relief sought; but the same must be ancillary to the main relief “in causes pending in such courts.”
 

 It is claimed that the receiver in the instant case was properly appointed, because:
 

 (1) The appointment was in fact ancillary to the main object and relief sought;
 

 (2) That the appointment was authorized under
 
 *175
 
 paragraphs 5 and 6 of Section 11894, General Code;
 

 (3) That the petition stated a valid cause of action, and is good against demurrer; and
 

 (4) That the appointment comes within the exceptions to the general rule, and could he made as a sole relief in the action, under the averments of this petition and the proof made, in the discretion of the court.
 

 With the last contention we do not agree, for the reasons above stated. As to the remaining three points, the question to be determined, therefore, must rest upon a consideration, not only of the petition, but of the evidence adduced at the hearing upon the application for the receiver. Therefore, upon the petition, amended petition, the answer of the corporation, and the testimony and the evidence, should the judgment appointing the receiver be sustained?
 

 We think the consent of the corporation cannot confer jurisdiction to appoint a receiver. Couse’s Ohio Private Corporations, p. 2180; Clark on Receivers, Yol. 1, Section 71, and cases cited; 34 Cyc.,, 106.
 

 An examination of the pleadings does not disclose that there is any matter to be litigated between the parties. There is no wrong to be redressed and no right to be enforced. There is no actual controversy demanding substantial relief beyond the mere appointment of a receiver.
 

 It is claimed, however, that, under the prayer for general equitable relief, there is sufficient averred to justify the appointment of a receiver as in fact ancillary to the main object and relief sought. In
 
 *176
 
 other words, that the appointment of a receiver is necessary for the purpose of preservation of the property and to prevent its destruction, so that the interests of minority stockholders may be guarded against the anticipated fraud and manipulations of Hoiles, as a majority stockholder.
 

 In the light of the averments claimed to support such conclusions, and the testimony adduced, is there a sufficient showing to justify the appointment upon such theory?
 

 It is averred that “said defendant corporation has sufficient assets to liquidate its liabilities if its said property and business be preserved as a going concern through the function of a receiver appointed by the court.”
 

 It is not averred that the Mansfield Daily Journal Company is in fact insolvent, or in imminent danger of insolvency, although it does appear that it has a number of creditors, some of whom are pressing their claims for payment, and it is averred that the plaintiff fears a multiplicity of suits by creditors.
 

 It is not unusual for a company of the size of the defendant corporation, having a large number of outstanding claims against it, to have some of its creditors pressing for payment; but its condition does not appear to have been such that it was in' fact insolvent. It is said, in
 
 Edison
 
 v.
 
 Edison United Phonograph Co.,
 
 52 N. J. Eq., 620, 623, 29 A., 195, 196:
 

 “It is too plain to require demonstration that this court has no power to appoint a receiver to wind up a corporation because it is feared or even expected that it will become insolvent at some time
 
 *177
 
 in the future. Nothing short of present actual insolvency will warrant the appointment of a receiver for such a purpose.”
 

 In
 
 Willson
 
 v.
 
 Waltham Watch Co.,
 
 (D. C.), 293 F., 811, 814, it is said:
 

 “It is well settled that, unless the rights of the plaintiff are such as to entitle her to relief in equity, she cannot ask for a receivership merely on the ground that under the guidance of the court the internal affairs of the corporation might be conducted in a manner more satisfactory to her. Receivership is an incident merely to proceedings in equity involving the rights of parties, and is resorted to for the purpose of conserving the property and assets of the respondent pending adjudication of these rights. A receivership cannot be the primary object of litigation. This court is without jurisdiction to take over the affairs of a corporation for the purpose of administering its internal affairs in conformity with the desires of a minority stockholder.
 
 Hawes
 
 v.
 
 Oakland,
 
 104 U. S., 450, 26 L. Ed., 827;
 
 Sidway
 
 v.
 
 Missouri Land & Live Stock Co.,
 
 (C. C.), 101 F., 481, 484, 486;
 
 Zuber
 
 v.
 
 Micmac Gold Mining Co.,
 
 (C. C.), 180 F., 625;
 
 Myers
 
 v.
 
 Occidental Oil Corp.,
 
 (D. C.), 288 F., 997.”
 

 It is to be noted that no creditor is a party to this action; that no judgment has been taken against the corporation, or levy made upon any of its assets, or is any execution in the hands of the officers of the court for that purpose. We cannot find from the entire record that this case comes within the fifth paragraph of Séetion 11894, as one “when a corporation has been dissolved, or is
 
 *178
 
 insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.”
 

 Another ground urged for the appointment of a receiver is:
 

 “That, unless a receiver be appointed to preserve the property of defendant, there is great danger that the creditors and stockholders will suffer great and irreparable loss.”
 

 It is argued that, because one owning controlling interest in a rival newspaper has purchased the controlling interest in the defendant corporation, it necessitates the appointment of a receiver to preserve the assets of the latter company.
 

 It is well known that groups of newspapers are owned by the same interests, and that in some cities where more than one newspaper exists the ownership and control thereof is sometimes in the same individual, group of individuals, or syndicate. From the averments of the pleadings and from the testimony we think it does not necessarily follow that the wrecking of this corporation or the dissemination of its assets is an absolute result from the purchase of a controlling interest in its stock by one who has a like interest in a rival concern. It is entirely possible that by a common ownership more economic administration of both properties may be had.
 

 In the case of
 
 American Loan & Trust Co.
 
 v.
 
 Toledo, C. & S. Ry. Co.
 
 (C. C.), 29 F., 416, 5 Ohio Fed. Dec., 601, it is said:
 

 “But it is said the management is influenced improperly by the persuasive manipulations of a rival enterprise. This is a suspicion of bad faith that may be well or ill founded, but we do not see
 
 *179
 
 why a court of equity should, even if it be true, assume to determine either that the extension should or should not be made through the process of appointing a receiver and undertaking the control of the property. This is an extension of courts beyond any reasonable limits, and a dangerous application of their power.”
 

 Are the averments of fraud contained in the petition and amended petition sufficient to justify this appointment?
 

 It cannot be denied that Hoiles had a right to buy the stock of Brunner, and that Brunner had a right to sell. And, in order to prevent others having control of the $5,000 note against the company, Hoiles had a right, for the protection of his investment, to purchase such note. Does it necessarily follow that the mere purchase of this stock and of this note is proof of fraud and an intention on the part of Hoiles to use them in fraud of the rights of the stockholders of this corporation? It is to be noted that Hoiles tenders and offers “to extend the time of payment of his note against the Journal for a period of one year; that he consents and agrees to trustee his stock in the Journal for the same period of time to a trustee appointed by this court, with full power in the trustee to vote at any regular or called meeting of the board of directors of the company, with one limitation, that the trustee is not to vote for a change of the corporate character of the company nor a sale of the assets of the company.”
 

 In the light of the evidence and the offer of the defendant Hoiles with reference to the relinquishment of his right of control under his stock, or of
 
 *180
 
 his rights to reduce his promissory note to judgment and resultant levy, we think there was no sufficient showing of facts, or acts, going to make up actual or constructive fraud, to justify this appointment.
 

 It is well established in equity that, when a less drastic remedy than the appointment of a receiver will protect the interests of the applicant, such relief is to be granted rather than the extreme relief of receivership. As stated in 34 Cyc., 79:
 

 “As a rule of equity practice, the courts are very reluctant to appoint receivers, upon the idea that it is a practical displacement of the board of directors. It is an assumption of the function of the directors. It displaces the board of managers placed there by the stockholders, who sustain the relation of trustees for the stockholders, trustees for the corporation, and trustees for its creditors; and, before the court will take charge of the corporation, and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary action for the protection of the creditors, stockholders, and all parties concerned. The subjection of a corporate property and franchise to the custody of a receiver is a suspension in a greater or less degree of the powers of the corporation, in addition to devolving on the court often the continuance of the business of the corporation, and this is the explanation of the greater reluctance to appoint receivers over them and their property, than in the case of indivduals.”
 

 We think that this entire record discloses that the receiver was appointed upon the fear of what
 
 *181
 
 the defendant Hoiles might' do, rather than upon pleading and proof of what he in fact had done or was about to do; and, while he may have had power, by reason of his control of the stock and the possession of the $5,000 of notes against the company, to use the same in a way harmful to the minority stockholders, at the same time it might well be argued that in wrecking the company he would be wrecking his own property as well as that of the minority stockholders, and that, even though he might possibly recoup his loss on the investment from the beneficial effect of that course upon his holdings in a rival enterprise, yet he might better use the investment to the mutual advantage of both properties.
 

 But was any receiver necessary after Hoiles offered to surrender control of his stock and notes, the only weapons which he might use to carry out such fraudulent designs ? He would thus be stripped of power to do harm for at least one year. What could a receivership accomplish, unless the mere fear engendered by Hoiles’ purchase of the stock and note was sufficient grounds for appointment?
 

 Our attention is called to the case of
 
 Richey
 
 v.
 
 Brett, Recr.,
 
 112 Ohio St., 582, 148 N. E., 92, being a receivership matter in the city of Cleveland. It appears in the statement of facts and in the syllabus in that case that there was a case of actual insolvency, although the petition contains averments somewhat similar to the instant case, except that the plaintiffs were in fact creditors as second mortgage bondholders, as well as stockholders, and the prayer of the petition, among other things, was for a sale and dissolution of the corporation.
 
 *182
 
 A receiver was appointed who operated under order of the court; but such operations, as frequently occurs, were financially disastrous. A foreclosure by the trustee of the mortgage bonds was had, and the law point decided by this court was the nonliability of the plaintiffs for the compensation of the receiver and his expenses in the administration of an insolvent concern. The facts as disclosed by the record in that case are of such dissimilar character that we do not regard that case as authoritative in the present instance.
 

 It is claimed that the case of
 
 In re Lewis,
 
 52 Kan., 660, 35 P., 287, supports the contention of defendants in error. It is to be noted, however, that the court in that case recognizes that a distinction exists where a statute provides that a receiver can only be appointed in a pending cause, and therefore that the remedy is merely auxiliary or in aid of an action already' brought. An examination of the Kansas statute discloses that the language “in causes pending in such courts respectively” is entirely omitted.
 

 The case of
 
 In re Lewis, supra,
 
 should be considered in the light of
 
 City of Parsons
 
 v.
 
 Parsons Water Supply & Power Co.,
 
 104 Kan., 294, 178 P., 438, and also the case of
 
 Inscho
 
 v.
 
 Mid-Contment Development Co.,
 
 94 Kan., 370, 146 P., 1014, Ann. Cas., 1917B, 546, the first paragraph of the syllabus of which is:
 

 “The majority of the stockholders of a corporation have the right to control the corporation, and the majority of the board of directors have the right to determine its policies and manage and direct its affairs so long as they act in good faith
 
 *183
 
 and within the limitations of the law. The appointment of a receiver for a solvent, going concern is a last-resort remedy and should not be employed to correct improper conduct when other adequate remedy is available. Bad judgment and ill success in previous ventures, completed or not being actively prosecuted, current transactions merely unwise and not so reckless or extravagant as to amount to breach of trust, irregularities and misconduct which are not so culpable as to jeopardize the interests of the corporation and the rights of stockholders, and dissensions among directors, so long as a majority of them control, do not warrant' the appointment of a receiver. In no case should a court take the property and business of a solvent, going corporation out of the hands of the board of directors and into its own hands by the appointment of a receiver at the suit of a minority stockholder unless the right of the plaintiff be free from reasonable doubt and the danger of loss or injury be clearly proved.”
 

 The case of
 
 Wm. H. Taylor Finance Corp.
 
 v.
 
 Oregon Logging & Timber Co.,
 
 116 Or., 440, 241 P., 388, is also relied on by defendants in error. An examination of that case discloses that the corporation had no officers except a secretary and treasurer, who had no administrative powers, the corporation being without a legal or functioning board of directors; its stockholders having failed and refused to function as such, it was powerless to protect the corporate property or the interests of the stockholders. “The case, therefore, was not that of a corporation engaged in the full exercise of its corporate powers and transacting its cor
 
 *184
 
 porate business through officers elected by a majority of the stockholders, but it was one where the corporation itself and a majority of its stockholders had wholly failed and neglected to exercise the corporate powers and to perform the duties owed by it to the public and to every stockholder of the corporation.
 
 * * *
 
 Under the admitted facts of this case the appointment of a receiver was the exercise of a power which is necessarily inherent in a court of equity, and which ‘may be invoked whenever there is an estate or fund in existence and no competent person entitled to hold it.’ High on Receivers, (4th Ed.), Section 9. This power is not conferred by statute, but exists independently of it, and, since there is
 
 nothing in our statute
 
 which takes away this power from a court of equity or prohibits its exercise in a case where the facts are as above stated, the exercise of the power by the court in the appointment of these receivers was proper. ’ ’
 

 Section 1108 of the Oregon Code is quite broad, and provides:
 

 “A receiver may be appointed in any civil action * * * or proceeding: * # *
 

 “8. When a corporation or co-operative association has been dissolved or is- insolvent or in imminent danger of insolvency and it is necessary to protect the property of the corporation, or cooperative association, or to conserve or protect the interests of the stockholders of [or] creditors.”
 

 The facts in the
 
 Taylor case, supra,
 
 as well as the statute of Oregon, are such that we do not feel that the same should be regarded as an authority for the appointment of a receiver in the case at bar.
 

 
 *185
 
 The cases of
 
 Vila
 
 v.
 
 Grand Island Electric Light, Ice & Cold Storage Co.,
 
 68 Neb., 222, 94 N. W., 136, 97 N. W., 613, 63 L. R. A., 791, 110 Am. St. Rep., 400, 4 Ann. Cas., 59,
 
 Mann
 
 v.
 
 German American Investment Co.,
 
 70 Neb., 454, 97 N. W., 600, and
 
 Smiley
 
 v.
 
 Sioux Beet Syrup Co.,
 
 71 Neb., 586, 590, 99 N. W., 263, 101 N. W., 253, are cases that maybe cited in support of the position of plaintiff in error.
 

 Entertaining the view that the appointment of this receivership was not ancillary to any ultimate relief between the parties, but that the appointment was the sole purpose to be achieved, that the same was not justified by either subdivision 5 or 6 of Section 11894, General Code, the petition or amended petition not disclosing a pending action between the parties, we are of opinion that the receiver in this case should not have been appointed and that the motion for dismissal under the pleadings should have been sustained. It follows that the judgments of the courts below should be reversed.
 

 Judgment reversed.
 

 Allen, Kinkade, Robinson, Jones and Matthias,, JJ., concur.
 

 Marshall, C. J., not participating.