SHEARER *v.* THE UNION MORTGAGE CO.

374

(Decided February 8, 1928.)

*Mr. Joseph L. Stern,* for plaintiff in error.
*Messrs. Garfield, Cross, MacGregor, Daoust & Baldwin,* for defendant in error.

MIDDLETON, P. J.   This case is before the court on

a proceeding in error to reverse the judgment of the court of common pleas of this county rendered on a motion to appoint a receiver for the Union Mortgage Company, the defendant in error. This motion was filed in a case in which the plaintiff in error, Sam D. Shearer, was plaintiff, and the defendant in error was one of the defendants. The action is still pending in the court of common pleas and it was instituted by the plaintiff in error, who is a minority stockholder in the defendant corporation, on behalf of all the stockholders of the defendant corporation, against the defendant corporation and all of its directors, who are named as individual defendants. Of the directors so named the defendants D. D. Kimmell, E. C. Daoust, S. Chester Crobaugh, and Edwin Waller are charged particularly with many acts of malfeasance and misfeasance in office as such directors.

The petition is very long and includes many charges, among which may be mentioned the diversion of corporate funds for private use by the managing officers and directors, particularly those named as aforesaid, payment of dividends out of capital stock instead of surplus or profits, the issuance of false financial statements, and that the business of the company has been conducted so negligently that its property and assets are now insufficient to pay all just demands for which it is liable, or to afford reasonable security to those who may deal with it. It is further charged in this petition that the directors of said mortgage company, in order to cover up and conceal from the stockholders its true condition, are about to float a bond issue of approximately $10,000,000 under a so-called re-

financing scheme. It is alleged that they will sacrifice in the furtherance of this scheme mortgage securities of the company at a large discount, and that the company will be obliged to incur an expense of $700,000 and upwards if the plan of the directors is permitted to be put into effect. The prayer of the petition is, first, for an injunction against this plan of issuing bonds, or against any other refinancing scheme; second, for an accounting by all of the directors for assets or other property belonging to the corporation, and for damages sustained by reason of the misfeasance and malfeasance complained of; third, for a dissolution of said corporation; and, fourth, for such other and further general relief as may be proper in the premises.

When the case came on for hearing on the motion for the appointment of a receiver and for a temporary injunction the bill of exceptions shows that counsel for the plaintiff made a very extended statement of facts in argument to the trial court, covering many pages of the bill of exceptions. In addition to the matters pleaded in the petition, to which attention has been directed, counsel for plaintiff in this statement contended that the motion was being prosecuted under favor of subsections 5 and 6 of Section 11894, General Code, and made the further statement that the plaintiff claimed that the mortgage company was in imminent danger of insolvency. In this statement counsel for plaintiff further said in respect to the proposed bond issue that—

"If that bond issue is permitted to go through there would be foisted upon the public bonds, so-called first mortgage bonds, upon security that is by no means adequate. There would be at least $700,000

out of that $10,000,000 that would be expense. And, of course, if in the period of three years they could unload some of these properties it would be delaying —it might be delaying the inevitable here."

Thereupon the court inquired of counsel if they were asking an injunction upon the ground that this proposed plan was illegal or simply on the ground that it was poor business. To this counsel replied:

"Yes; we claim that it is very poor business— very improvident."

Further on in respect to this injunction counsel said:

"Well, we claim that that procedure would be unnecessary if these directors would refund to the company the money which belongs to it, and that this is being done as a further means of covering up— and we so charge that—of covering up the real condition of the affairs of this company. And we don't only ask for an injunction with respect to this $10,000,000 matter, we state these very corporations that they have, in which these individual directors are participating with money furnished by financing on projects financed by the Union Mortgage Company.

"By the Court: That would be upon the ground that that condition is illegal, of course? A. Yes, your honor."

After counsel for the plaintiff had concluded the foregoing statement, he called one of the defendant directors, Edwin C. Daoust, for cross-examination under the statute, and began his examination. At that point in the proceeding the defendants objected to any further evidence, upon the ground that there was nothing stated in the petition which as a matter

of law would justify or warrant the appointment of a receiver. This objection was heard by the court, an adjournment taken, and when the court reconvened the objection to further evidence was sustained and the motion for the appointment of a receiver was denied. The decision of the trial court is incorporated in the bill of exceptions. Its action in denying the motion appears to be predicated upon the theory that the appointment of a receiver is wholly an ancillary matter and intended to be an aid to the main action, and such appointment may be made only where some other equitable relief is demanded, which, under the facts pleaded, the court has the right to grant. The trial court seems to have determined that there was no relief demanded in the petition which would justify the appointment of a receiver, except that for a dissolution of the corporation, and in respect to the dissolution of the corporation, that the plaintiff, under the provisions of the General Code, was without a right to prosecute such action.

We have given the complaints made by the plaintiff in this proceeding very careful consideration and are forced to conclude that the trial court was correct in its determination of plaintiff's rights on his motion for the appointment of a receiver. In this state at least it is now definitely settled that what has been considered general authority for the appointment of a receiver, as set forth in the sixth paragraph of Section 11894, General Code, in the following language, "cases in which receivers heretofore have been appointed by the usages of equity," has some limitation.

In the case of *Hoiles* v. *Watkins,* decided by the

Supreme Court of this state on June 22, 1927, reported in 117 Ohio St., 165, 157 N. E., 557, it is held:

"To justify the appointment of a receiver within the purview of the sixth paragraph of Section 11894, General Code, in 'cases in which receivers heretofore have been appointed by the usages of equity,' it must appear that the same is ancillary to some final relief in equity between the parties, and not the sole object sought; nor should such appointment be made if the plaintiff has a full and adequate remedy at law in respect to his alleged rights, or where the court can find another and less stringent means for protecting the rights of the parties."

In the opinion it is said:

"Especially is it to be noted that the appointment of a receiver is merely ancillary to the main cause of action and incidental to the chief and ultimate relief sought, and can be invoked only in a pending suit brought to obtain relief which the court has power to grant. We are not unmindful that in some jurisdictions, under extreme and unusual circumstances, a court of equity may appoint receivers as the ultimate relief sought. However, the rule in Ohio, in view of the statutory provisions, does not permit the extension of the privilege to appoint receivers as the sole and ultimate relief sought; but the same must be ancillary to the main relief 'in causes pending in such courts.'"

We regard the case cited, and particularly the language of the court just quoted, as decisive of the questions involved here. The ultimate relief sought in the petition, giving it the most liberal interpretation that may be given, and conceding what counsel for plaintiff claims, is, as before observed, first, an

injunction; second, an accounting; third, a dissolution of the corporation. There is nothing in the facts pleaded in support of the claim for an injunction which in the slightest degree indicates any necessity for the services of a receiver. If the trial court ultimately grants the injunction that is the end of that controversy and no further action would be necessary on the part of any of the parties concerned. The action for an accounting is not an action against the defendant company, but an action for its benefit, and against its directors individually.

There remains to be considered, then, the right of the plaintiff to maintain an action for the dissolution of the corporation. It is contended by the defendant that the plaintiff has no right to maintain such action, it being conceded that he owns only 20 shares of the outstanding stock of the defendant company, which has an authorized capital of $8,000,000, of which more than $6,000,000 has been issued and is now outstanding. It has been, we think, the well-settled rule in Ohio that a court of common pleas has no power to dissolve a corporation except as expressly granted by statute. This was the rule adopted in the case of *C., H. & D. Rd. Co.* v. *Duckworth,* 2 C. C., 518, and followed in *Straman* v. *North Baltimore Water Works Co.,* 4 C. D., 339, 8 C. C., 89, and is a doctrine which under the authorities appears to prevail generally.

It is said in 4 Pomeroy's Equity Jurisprudence (4th Ed), Section 1540:

"It is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority, a court of equity has no power to dissolve a corpora-

tion, or wind up its affairs and sequestrate its property.''

In 1 Clark on Receivers, Section 215, it is said:

''So a court of equity, in the absence of statute, has no right to wind up or dissolve or annihilate a corporation or to deprive it of its right to live, given it by the Legislature.''

In the recent enactment of what is known as the General Corporation Act (112 O. L., 9), in Sections 86 and 87 of the act, Sections 8623-86 and 8623-87, General Code, the Legislature has made ample provision for the dissolution of corporations, including not only the grounds upon which a corporation may be dissolved, but the parties who may bring such action. In the last subdivision named it is provided that a petition for dissolution may be filed by the attorney general, the prosecuting attorney for the county in which the corporation has its principal office, or by any creditor or person interested when the charter of the corporation has been canceled. It is further provided that in all other cases a petition may be filed by holders of a majority of the shares which would be entitled to vote on a proposal to dissolve. We must regard the provisions of this recent enactment as exclusive, and hold that under the statute in this state a court of common pleas has no power to dissolve a corporation except as provided therein.

It necessarily follows that under the doctrine of *Hoiles* v. *Watkins, supra,* a motion for a receiver cannot be allowed in an action for the dissolution of a corporation unless the proceeding for such dissolution has been brought in compliance with statutory provisions.

The judgment of the court of common pleas de-

nying the motion for the appointment of a receiver is affirmed, and the motion by the defendant company to dismiss or stay this proceeding is overruled.

*Judgment affirmed.*

MAUCK and THOMAS, JJ., concur.

Judges of the Fourth Appellate District sitting in place of Judges SULLIVAN, VICKERY and LEVINE of the Eighth Appellate District.