RODERICK, TRUSTEE, ET AL., *v.* THE CANTON HOG RANCH CO. ET AL.

(Decided October 18, 1933.)

*Mr. Price Janson* and *Messrs. Roderick & Wingerd,* for plaintiffs in error.

*Messrs. Lynch, Day, Pontius & Lynch,* for defendants in error.

SHERICK, P. J.   The plaintiffs below, Morgan W. Roderick, trustee, and others, prosecute error to this court from a judgment dismissing their petition upon the motion of the defendant company, which attacked

the plaintiffs' motion for the appointment of a receiver for the corporation. The company's motion further asked that it be dismissed from the suit.

The reason assigned for the prevailing motion is that the only relief sought as against it is a receivership, and that such is not subservient to some further or other relief sought between it and the plaintiffs.

The defendant Quigley likewise moved for a dismissal of the petition upon the theory that the petition does not show that the plaintiffs are the real parties in interest, and asks that, if his motion be overruled, the plaintiffs be required to make the petition definite and certain.

It does not appear that the plaintiffs were given an opportunity to amend. Of this, however, they do not here complain, but state in open court their willingness and desire to treat the defendants' motions as if they were in fact demurrers to the petition, and this seems to have been the manner of their entertainment by the trial court.

We would further remark that this matter came to this court both by appeal and proceedings in error. The plaintiffs, however, do not here seek leave to amend their pleading, but request that the appeal be dismissed and the action be heard upon the error proceeding. It therefore becomes this court's duty to ascertain if the plaintiffs' petition states a cause of action as against the defendants, or either of them. The pleading, because of its length, will not be set forth in its entirety, but the substance thereof will be recited as concisely as possible, along with certain excerpts therefrom.

It is averred that the nature of the company's business is the means whereby the city of Canton disposes of its garbage, by contract between it and the city. The plaintiffs, four in number, assert ownership of some two hundred shares of the common capital stock of the company, whose total authorized and out-

standing shares are five hundred in number. The defendant Quigley and his wife own some two hundred and thirty-seven shares thereof; and the remaining thirty or forty shares are owned by other parties, a number of whom, together with Quigley, constitute the company's board of directors. It is further averred that these thirty or forty shareholders are in control of the company, and that Quigley is the corporation's president and treasurer.

It is said that Quigley exercises almost sole and individual control in the company's management; that he disregards the board of directors, and refuses to call meetings or consult with the board concerning corporate expenditures and the creation of indebtedness. They charge Quigley with having improved the company's physical property, and with giving a company note in payment for a piece of plant equipment, all without authority of the board. They charge that he took an extended tour without notice to any one, and during this time the company business was neglected, and that he conceals the company books and records, and refuses to permit stockholders and directors to examine the same.

The petition then recites that the company has two contracts with the city whereby the company receives an average monthly income of $1,070; that the city has failed to pay its contract obligation for a period of three months, and for the past two years Quigley has operated the company business at a loss; that, by reason of the city's refusal to pay, the company's working capital has been exhausted; that the company cannot be operated without the income derived from the city, and that Quigley has sold hogs, live stock, and chattels to provide working capital, which, if continued, will leave the corporation without sufficient equipment and live stock to continue its business.

The petition then says that the company has recently been sued for about $1,000, and that the corporation is

otherwise indebted in an equal amount. The petition then recites as follows:

"Plaintiffs further say that said corporation is in imminent danger of insolvency; that said corporation, through M. L. Quigley, its president and treasurer, has committed unlawful acts; that said M. L. Quigley, as president and treasurer, has misapplied corporate assets, and committed fraud on these plaintiffs and other stockholders; that said Board of Directors of said defendant corporation has neglected and idly stood by and permitted said M. L. Quigley to grossly mismanage the business of said defendant corporation, and use corporate property for his individual profit and gain; that said Board of Directors have wilfully and wrongfully permitted said M. L. Quigley to jeopardize the corporate business; that said M. L. Quigley's conduct, as president and treasurer, in maintaining and operating The Canton Hog Ranch Company and in handling the funds of said corporation has been so inconsistent with good principles and judgment that the plaintiffs believe that to allow him to continue further is but to squander the assets that now remain and to exhaust the interests of the stockholders in said defendant corporation.

"Plaintiffs further say that the Board of Directors of said defendant corporation have been advised of the necessity of closer supervision of receipts and disbursements and more full accounting on the part of M. L. Quigley, as president of said defendant corporation; that said Board of Directors refuse and neglect to act, and none of these requests were considered or granted by said Board of Directors; that all redress within the corporation was sought before relief was asked in this Court."

It is next averred in the petition that a directors' meeting was held May 8, 1933, three days before the filing of this petition, at which meeting the directors authorized an audit of the company's books and rec-

ords, that the company has no books and records, and that such procedure is absurd and an unnecessary expense.

It is lastly stated that they bring this action as stockholders, in behalf of said other stockholders of the defendant company, and that they have no remedy at law. The petition's prayer is that Quigley, as treasurer, be required to account for all moneys received and disbursed by him as such; second, that Quigley be enjoined from selling or disposing of any corporate assets; and, third, that a receiver be appointed to operate the corporation's business and care for the company property.

Keeping in mind the averment of the petition which immediately precedes its prayer, we must confess that a rather startling statement appears on page four of plaintiffs' brief. It is therein said: "That this action is not a suit on behalf of the corporation, but is a suit to protect the individual property right of the individual stockholders who are plaintiffs in this action."

If either of these conflicting conceptions of the law be the true theory of this suit, which it is not, then the plaintiffs should fail in their present project. The purpose of suits of this character is for the primary benefit of the party wronged, and that party is the corporation itself; and the duty rests in the first instance upon the corporation to make its officers account for mismanagement and misapplication of its funds. True, the corporate benefits are ultimately secured by its stockholders; but not in the first instance.

This court in the case of *Wasmer* v. *Massillon Iron & Steel Co.*, 7 Ohio App., 488, and in *Lowrey* v. *Wefler*, 12 Ohio Law Abs., 34, 36 O. L. R., 322, has adhered to the well-recognized rule, fully set forth in 10 Ohio Jurisprudence, Sections 253 and 254, that a stockholder may not maintain a suit of this character in his own name for the benefit of the corporation, without alleging that a demand has been made upon the corporation

or its proper available officers to bring such suit. This rule is, of course, subject to the exception that one is not required to do a vain thing; that is, to make such a demand of an officer so charged with wrongdoing and against whom redress is sought, and against whom the suit would have to be brought.

The petition before us nowhere therein alleges that a demand was made to commence this action, unless the words, "that all redress within the corporation was sought before relief was asked in this Court," are an equivalent thereof. We do not think that they are, for two reasons: First, this phrase refers to the preceding portion of the paragraph of which it is a part. It is quoted in full, *supra*. It pertains to requests for closer supervision and more full accounting. One further thought, the words "more full accounting" and "closer supervision" imply that Quigley had been accounting, and that the directors had been supervising. They, at least, suggest a rather grave inconsistency in the plaintiffs' claims. Second, the statement is but a conclusion. Perhaps the plaintiffs may be of opinion that they have exhausted all redress obtainable within the corporation itself, but the fact remains that they do not plead a demand upon the corporation to commence this suit in equity, and its refusal to act, which are prerequisite requirements to their right to maintain the same as parties plaintiff.

And now we would further consider the fact that it is not averred that the corporation refused to institute this action. This court has recently held in *Cooper* v. *Central Alloy Steel Corp.*, 43 Ohio App., 455, at page 460 [183 N. E., 439]: "Courts will not interfere in their [corporate] management when they act within their powers and in good faith in the exercise of their discretion, and that in such case a court of equity is without jurisdiction to interfere at the suit of a dissenting stockholder, and it is only when, after demand, a board of directors have refused to sue, and when

such refusal is wrongful, fraudulent, and abritrary, and without investigation or proper consideration."

We believe that this is a sound equitable principle, specially applicable in this case, by reason of the pleaded fact that the board of directors in proper meeting resolved that a certain designated "Mr. Smith" should make an audit of the company's business. Now, the petition does not aver that the directors are a party to the frauds charged as against Quigley. And, if they are guilty of no wrong, except it be supine acquiescence in Quigley's management, surely the plaintiffs should approve of the board's endeavor by an audit to ascertain the truth or falsity of the charges made as against the company's chief officer. The plaintiffs, however, would have the board of directors act in an arbitrary manner and without due consideration. It seems to us that plaintiffs, above all other stockholders, should be insisting upon an audit, yet they here assert that such is absurd and an unnecessary expense. These facts alone should cause a court of equity to be hesitant to grant the relief prayed for; but, when such facts are considered together with the date of the filing of this petition, that is, on the third day after the board of directors so resolved, the conclusion is almost irresistible that the plaintiffs desire no audit, or investigation, or proper consideration of the charges made. They hasten and file this suit before an audit could be made, and before the board could knowingly and conscientiously refuse the plaintiffs' demand to bring this suit.

We have in mind the maxim that equity aids the vigilant and bestows reward on those who are quick to assert their rights; but we know of no equitable doctrine that should warrant a court of chancery in hastening to the aid of one who employs exceeding dispatch in order that he may be in position to complain of the procrastination of another, when that other is then trying to do that which is right ethically and which

equity would require. One should be just as well as vigilant.

In view of the facts alleged and the reasons assigned, we hold that the board of directors have not had opportunity and have not refused to accede to the plaintiffs' demand to bring this suit; the plaintiffs not having pleaded their own demand and the board's refusal to sue, but, on the other hand, having pleaded the board's action for an audit, which, taken in the face of the plaintiffs' unseemly haste, leads this court to the view that the plaintiffs do not desire to do equity. They, having failed to plead these necessary prerequisites that a stockholder must aver, now stand without capacity to maintain this suit as the real parties in interest.

We have read this petition with exceeding care, and from the knowledge thereby gained conclude and will now state that many of its averments are but the pleaders' opinions and legal conclusions. It is deficient in such facts as would dispense with the necessity of alleging that a demand to sue had been made. And, in view of the lack of averment that the board of directors have participated in the fraud charged against Quigley, and that they are not charged with any wrongdoing, and that they are not called upon to account, and that they would not be called upon to order the corporation to sue themselves, we hold that demand was not a futile and vain thing and that the means existed within the corporation itself to procure redress of the wrongs claimed by the removal of Quigley or institution of a corporate suit against him for an accounting; and, there being such a remedy extant, equity must not intervene until such remedies are exhausted.

The predecessor of this court in the case of *Coss* v. *Mansfield Lodge No. 56, B. P. O. E.*, 14 C. D., 36, 4 C. C. (N. S.), 11, held that the words, ''plaintiff has done all he could do on the floor of said lodge in a

parliamentary way to prevent the allowance and payment of said bill," are not sufficient. This phrase is very like the principal allegation herein pleaded and relied upon, which we have herein held, and do now hold, to be insufficient for the claim made for it. It is but the pleader's conclusion and not the statement of a fact.

The motion of the corporation, considered as a demurrer, should be sustained for a further reason. The only relief sought against it is the appointment of a receiver. *Hoiles* v. *Watkins,* 117 Ohio St., 165, 157 N. E., 557, 61 A. L. R., 1203, clearly states that, in order to "justify the appointment of a receiver * * * it must appear that the same is ancillary to some final relief in equity between the parties, and not the sole object sought * * *."

This court has followed that holding in the case of *Stark County Agricultural Society* v. *Walker,* 34 Ohio App., 558, 562, 171 N. E., 422. We do now continue to adhere thereto. The judgment is affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.