[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Defendants-appellants, a group of related motel entities, appeal the decision of the Mahoning County Common Pleas Court which granted a motion to appoint a receiver over appellants' motel property as requested by various parties, including defendants-appellees DiVito Construction, Sergio DiPaolo, and Source One Contractors, Inc. The issues before us concern whether the trial court was permitted to appoint a receiver without holding an evidentiary hearing and whether the trial court otherwise abused its discretion in appointing a receiver. For the following reasons, the decision of the trial court is upheld as a sound exercise of discretion.
 STATEMENT OF THE CASE {¶ 2} In September 2000, N.P. Motel Systems contracted with Sergio DiPaolo and Source One to act as general contractor in the construction of a Fairfield Inn in Austintown, Ohio. A subsidiary of N.P. Motel Systems, Bhole, Inc., later contracted with DiVito Construction, Inc. to complete construction on the motel after a dispute arose with Sergio DiPaolo and Source One. It is alleged that after failing to fully compensate the first general contractor, appellants then failed to fully compensate the second general contractor. Thereafter, these two contractors and various subcontractors filed mechanic's liens against the motel property.
 {¶ 3} On October 6, 2003, two of the subcontractors filed a complaint with claims for relief including: foreclosure on mechanic's liens; action on creditor's bill; unjust enrichment; quantum meruit; and fraudulent conveyance. Plaintiff Victory White Metals Company had filed their affidavit of mechanic's lien in April 2003 for approximately $14,000. Plaintiff ACD, Inc. had filed their affidavit of mechanic's lien in June 2003 for approximately $6,000. In addition to other remedies, these plaintiffs asked that a receiver be appointed over the subject realty due to an alleged fraudulent conveyance of the property on July 3, 2003, whereby N.P. Motel Systems transferred the realty to Bholenath, Inc., another wholly owned subsidiary.
 {¶ 4} Plaintiffs primarily filed suit against Bholenath, Inc. and N.P. Motel Systems, Inc. aka N.P. Motels aka Alliance Hospitality aka Fairfield Inn. These primary defendants are the appellants herein, and are all alleged to be owned by a member of the Patel family. The complaint included as a defendant Second National Bank of Warren nka Sky Bank, the mortgagee on the property.
 {¶ 5} Since they had an interest in the subject realty, plaintiffs also named as defendants their fellow lien holders, including appellees in this appeal. For instance, appellees Sergio DiPaolo and Source One had filed a mechanic's lien in April 2003 for approximately $180,000; apparently, this amount included the amounts owed to the various subcontractors. Appellee DiVito Construction had filed an affidavit for a mechanic's lien in July 2003 in the amount of $105,000.
 {¶ 6} DiVito answered with denial and later asked to amend its answer, file a cross-claim against appellants, and file a third party complaint against Bhole, Inc. and Alliance Hospitality, Inc. DiVito had a separate suit pending against these defendants but later dismissed that suit since they had been named in this suit.
 {¶ 7} In April 2004, appellants filed a motion to dismiss for failure to state a claim or for summary judgment on the grounds that the plaintiffs' claim would become moot and unenforceable upon an order of foreclosure. Appellants pointed to an affidavit they filed stating that they have absolutely no intention of paying any of the liens. They argued that all of the liens resulted from breach of contract by Sergio DiPaolo and Source One. Appellants then consented to foreclosure and a sheriff's sale of their own property.
 {¶ 8} Plaintiffs contested this motion arguing that appellants' consent to foreclosure is an attempt to strip the property of the mechanic's liens. They noted that they sued for various forms of relief, not just foreclosure.
 {¶ 9} In May 2004, DiVito filed a motion to appoint a receiver over appellant's subject property. As authority, they cited the general receiver statute, starting with R.C. 2735.01, and the Uniform Fraudulent Transfer Act in Chapter 1336. DiVito incorporated plaintiffs' arguments in their complaint dealing with the alleged fraudulent conveyance. DiVito noted that the subject realty had been transferred from N.P. Motel Systems to Bholenath after many of the liens were filed. The deed evidencing the transfer was attached.
 {¶ 10} It was claimed that the consideration received by the debtor was not reasonably equivalent to the value of the subject realty and that the transfer was made when the debtor was insolvent (apparently alleged only because the debtor failed to pay their creditors). In support, the affidavit of the chief executive officer of N.P. Motel Systems, Naresh Patel, was attached. This affidavit had been used to receive an exemption from the county's realty conveyance fee. It states that N.P. Motel Systems reorganized and formed Bholenath as a wholly owned subsidiary for the purpose of holding title to the realty conveyed solely in exchange for all of the stock of Bholenath.
 {¶ 11} DiVito also attached the affidavit of a realtor establishing the estimated value of the subject realty to be between $3,000,000 and $3,500,000. DiVito then attached the mortgage to establish that appellants only owe $2,500,000 to the bank, leaving equity for the lien holders if the realty is sold at fair market value rather than at a sheriff's sale where all liens would be wiped out. DiVito urged that this equity as well as the current income of the property needs protection during the pendency of the proceedings.
 {¶ 12} To support its motion, DiVito noted a "strange" and "highly unusual" motion filed by appellants asking the court to foreclose on its own property, opining that it was clearly calculated to clear the liens from the realty. DiVito noted that appellants supported their request to foreclose on itself by citing a clause in its mortgage with the bank that technically put it in default; however, DiVito pointed out that the bank advised the court that the bank does not take issue with the clause since appellants are not in default of their payments.
 {¶ 13} DiVito concluded that a receiver was required: to protect the rights of the creditors and lien holders; to investigate the relationship between the numerous interlocking companies and members of the Patel family; to prevent further transfer without consideration; to determine the relationship between the owner of the realty and the entity operating the motel so as to determine whether there is sufficient cash flow to pay; and to examine and preserve the business currently operating on the realty. DiVito reasoned that if a receiver is not appointed and the realty goes to foreclosure, then the bank would be the single bid on the property and would sell the realty back to the Patel family, leaving the contractors and subcontractors without their liens. The uniqueness of this case was emphasized in that the business is an incomegenerating profitable enterprise with equity upon which the owners pray for foreclosure in order to avoid paying those who constructed the business.
 {¶ 14} Appellants responded by arguing that none of the reasons for appointing a receiver under R.C. 2735.01 apply. Appellants argued that sufficient evidence was not presented to justify the drastic remedy of appointing a receiver. Appellants also argued that the transfer was not fraudulent because there was consideration in that Bholenath assumed the assets, liabilities, and title while N.P. Motel acquired stock. They characterized the transfer as a standard Type D reorganization permitted by the Internal Revenue Code and lawful for tax purposes. They also claimed that no intent to hinder, delay, or defraud the creditors was established, noting that all mortgage payments are current and the hotel is still running efficiently at its location on the subject realty.
 {¶ 15} The court scheduled oral arguments on the receiver issue advising the parties to be prepared to argue their position at a pretrial on August 31, 2004. The plaintiffs then filed their own brief in support of appointing a receiver. They added that a receiver is necessary to prohibit appellants from transferring the property again or increasing the amount of their mortgage. Thereafter, Sergio DiPaolo and Source One also filed a memorandum in support of appointing a receiver. Then, the bank filed a brief in opposition to the motion for a receiver.
 {¶ 16} On October 1, 2004, the trial court denied appellants' motion consenting to foreclosure. The court then granted the opposing motion for a receiver and appointed a particular receiver. The case was then set for pretrial and for discussion of the receiver's compensation rate and duties.
 {¶ 17} Appellants appeared at the pretrial intending to further argue against appointment of a receiver. Apparently, they had never been served with the October 1, 2004 entry appointing the receiver. They wished to present the testimony of two members of the Patel family in order to allege that both DiVito and Source One were paid in full and that all of the property's debts are current. Appellants then argued that appointment of a receiver would put them in default under their mortgage and in breach of a franchise agreement with Marriott. Finally, appellants reiterated their contention that the transfer was not fraudulent and that there are no grounds for appointment of a receiver.
 {¶ 18} On October 29, 2004, the court reentered its judgment appointing a receiver. Appellants filed timely notice of appeal from both judgments. See Jamestown Village Condo Assn. v. Market Media Res., Inc.
(1995), 96 Ohio App3d 678, 689 (order appointing receiver is final appealable order), discretionary appeal not allowed, 71 Ohio St.3d 1444.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 19} Appellants' first assignment of error provides:
 {¶ 20} "The trial court erred by ordering the appointment of a receiver because the court never conducted a hearing regarding the necessity for the appointment of a receiver and no evidence was ever offered in the trial court to support said order."
 {¶ 21} This assignment of error basically has two parts. First, appellants argue that a hearing was required. Second, they present arguments that the evidence did not establish a fraudulent conveyance and thus a receiver should not have been appointed under Chapter 1336, the Uniform Fraudulent Transfer Act. At this point, we shall address the necessity for an evidentiary hearing under Chapter 1336, reserving an analysis on the necessity for an evidentiary hearing under Chapter 2735 until the next assignment of error dealing with such Chapter.
 {¶ 22} R.C. 1336.04 outlines potential liability for a fraudulent transfer as follows:
 {¶ 23} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 24} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 25} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 {¶ 26} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 {¶ 27} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."
 {¶ 28} Thus, the statute is said to cover actual fraud under part one and constructive fraud under part two. The statute lists various factors to consider in determining actual intent under the first part. R.C.1336.04(B)(1)-(11). These factors are often termed "the badges of fraud." Another statute in the Act defines value, reasonably equivalent value, and present value. R.C. 1336.03.
 {¶ 29} Although R.C. 1336.04(A) applies to creditors with claims that arose both before or after the transfer, R.C. 1336.05 also provides the following options for fraudulent transfers as to creditors with pre-existing claims:
 {¶ 30} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 {¶ 31} "(B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."
 {¶ 32} Definitions of insolvency are provided in R.C 1336.02. Insider and affiliate are defined in R.C. 1336.01(A) and (G).
 {¶ 33} In an action for relief arising out of a transfer that is fraudulent, the Act provides the creditor with various remedies: (1) avoidance of the transfer to the extent necessary to satisfy the claim of the creditor; (2) attachment or garnishment of the asset transferred or other property; and (3) subject to the principles of equity and theprocedural rules (a) an injunction against further disposition of the asset; (b) appointment of a receiver to take charge of the asset; or (c) any other relief the circumstances may require. R.C. 1336.07(A).
 {¶ 34} Appellees contend that no party requested an evidentiary hearing, various pretrials were held, the court had sufficient information upon which to base her decision, and Chapter 1336 does not specifically state that a hearing is required, and thus, no hearing was required. However, appellees are incorrect regarding R.C. 1336.07(A)(3)(b).
 {¶ 35} The Uniform Transfer Act is complex and requires many factual decisions to be made. It is a cause of action with statutorily defined defenses to be proven before the fact-finder. See R.C. 1336.08. It is a cause of action with remedies to be imposed after judgment is rendered for the claimant. R.C. 1336.07 lists appointment of a receiver as a statutory remedy on equal status as avoidance of the transfer. See R.C.1336.07(A).
 {¶ 36} If appellees' position were correct, then the trial court could also have imposed without a trial the other remedies sought in the complaint and permitted under this Act, such as avoidance of the transfer. It cannot be disputed that an evidentiary hearing/trial is required to impose this remedy upon a finding of fraudulent transfer. Appellees' position would mean that the elements for a fraudulent transfer with all its ramifications can be established in the absence of trial. Such is an untenable position. As in any case on a cause of action seeking various remedies, a trial court is required to appoint a receiver under R.C. 1336.07(A)(3)(b).
 {¶ 37} An exception would be if the claimant filed a motion for summary judgment, met their initial burden of establishing that there was no genuine issue of material fact remaining for trial, and the debtor failed to meet their reciprocal burden. All of the case law dealing with the Uniform Fraudulent Transfer Act presupposes that a trial or summary judgment occurred.
 {¶ 38} Here, the claimants did not file a motion for summary judgment. Even if the motion to appoint a receiver would have been converted to a motion for summary judgment (which it was not), there are too many factual issues. Some reasonable person could find in favor of appellants on the statutory elements of fraudulent transfer based upon the evidence presented in conjunction with the motion to appoint a receiver. Thus, we need not review whether appellants' conduct fits under the elements outlined in R.C. 1336.04 or 1336.05. Such are issues for trial.
 {¶ 39} However, the motion to appoint a receiver and the trial court's decision were also based upon Chapter 2735, which allows appointment of an interim receiver. See, also, R.C. 1336.07(A)(3)(c) (subject to the principles of equity and any procedural rules, any other relief as the circumstances may require). It was an interim receiver that was truly appointed here. Thus, we shall proceed to the second assignment of error on this topic.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 40} Appellants' second assignment of error contends:
 {¶ 41} "The trial court abused its discretion and therefore erred as a matter of law in appointing a receiver because the requisite provisions of ohio revised code section 2735.01 were never proven by appellees."
 {¶ 42} Chapter 2735, entitled "Receivership," expressly provides for appointment of an interim receiver in pending causes. Specifically, R.C.2735.01 states:
 {¶ 43} "A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, in the following cases:
 {¶ 44} "(A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
 {¶ 45} "(B) In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt;
 {¶ 46} "(C) After judgment, to carry the judgment into effect;
 {¶ 47} "(D) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;
 {¶ 48} "(E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;
 {¶ 49} "(F) In all other cases in which receivers have been appointed by the usages of equity."
 {¶ 50} Since this statute deals with appointment of receivers pending a lawsuit, a trial is obviously not necessary. There are not final elements to prove. The movant need not prove the merits of their case in order to receive appointment of an interim receiver.
 {¶ 51} Under section (A), in an action by a creditor to subject property to his claim, the plaintiff or party whose interest in the property is probable can file a motion for appointment of a receiver. The motion and its attachments must show that the property is in danger of being lost, removed, or materially injured.
 {¶ 52} Evidentiary material similar to that often attached to summary judgment motions can be used. However, the test is much less stringent.
Obviously, the movant need not establish that there is no genuine issue of material fact or that all reasonable persons would find that the property is going to be lost, removed, or materially injured. Cf. Civ.R. 56. Rather, the statute merely provides that the movant must show that there is a danger the property or fund is going to be lost, removed, or materially injured. R.C. 2735.01(A). In fact, the test is almost the opposite of the test for summary judgment; essentially, the movant need only establish that there is a genuine issue of material fact that the property or fund is in such danger or that some reasonable person could find such a danger.
 {¶ 53} By the character of the statute, an evidentiary hearing is not required in order to appoint a receiver where the court is sufficiently convinced that the property is in danger from review of the affidavits, attachments to those affidavits, admissions, and the inferences that can rationally be drawn from these materials and from any arguments presented. This is especially true if no party requests such a hearing. The parties were permitted to file multiple briefs and responses on the issue. The court sua sponte scheduled oral arguments on the matter. Appellants did not ask for a more extensive hearing. Rather, they gave the court the impression they were resting on the allegations in their numerous memoranda with attachments filed on the topic of a receiver.
 {¶ 54} Contrary to appellants' arguments, the trial court did not merely have arguments of counsel before it when ruling. The court had before it affidavits with attachments. Proof of the property's transfer to a subsidiary for stock was properly presented. The court was presented with admissions in the content of appellants' responses and other filings and in the form of a consent motion to foreclose on its own property. Such docketed and filed consent is strong evidence that the property is in danger of being lost, removed, or materially injured. Furthermore, the court had before it appellants' affidavit submitted in a filing where they admit that they have no intention of paying the lien holders. The nonmovants' own filings could be considered as evidence against their position responding to the receiver motion, as can the arguments and explanations (or lack thereof) presented by the nonmovants and their counsel. The evidence and its effect on the trial court's decision will be further discussed infra.
 {¶ 55} The decision to appoint a receiver under R.C. 2537.01 is subject to the trial court's sound discretion and will not be disturbed absent a clear abuse of discretion. State ex rel. Celebrezze v. Gibbs
(1991), 60 Ohio St.3d 69, 73. The trial court has been instructed as follows:
 {¶ 56} "A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." Id. at 75, fn3, quoting 65 American Jurisprudence 2d (1972) 873, 874, Receivers, Sections 19, 20.
 {¶ 57} Much older Supreme Court law has stated that the appointment of a receiver is an extraordinary, drastic, and sometimes harsh measure only to be exercised where the failure to do so would place the movant in danger of suffering irreparable loss. Hoiles v. Watkins (1927),117 Ohio St. 165, 174. That case also stated that a receiver should not be appointed where the movant has an adequate remedy at law or where the court can find another less stringent remedy. Id.
 {¶ 58} However, the main holding in Hoiles was that receivership under the statute, now R.C. 2735.01, must be ancillary to pending proceedings and cannot be the only relief sought. Id. at 176-177 (stating that a shareholder cannot file an action merely for appointment of a receiver because she anticipates corporate manipulation without stating any cause of action). Such is not the case here.
 {¶ 59} Moreover, the movant in Hoiles proceeded under the catch-all provision of current R.C. 2735.01(F), which allows appointment of a receiver "[i]n all other cases in which receivers have been appointed by the usages of equity." See Id. at syllabus. Additionally, the Supreme Court specified that its pronouncements of law applied only to those motions made under R.C. 2735.01(F) (in its current form). Here, the movants only resort to R.C. 2735.01(F) in the alternative to the main argument under R.C. 2735.01(A). Thus, the law set forth in Holies does not detract from appellees' position.
 {¶ 60} Still, it should be recognized that the Hoiles Court also noted that courts are reluctant to appoint receivers for corporations that are currently functioning. Id. at 180. They reasoned that appointment of a receiver in such a case is a practical displacement of the board of directors who were seated by the corporation's shareholders. Id.
 {¶ 61} Nevertheless, the Court then suggested that their rationale would change if the movant was a claimant/creditor. Id. at 177, 181. Here, the movants are claimants and creditors who had filed affidavits for mechanic's liens and were attempting to collect upon them.
 {¶ 62} Applying R.C. 2735.01(A), this is an action by a creditor to subject property or a fund to his claim. There is an application by a party whose interest in the property, the fund, or the proceeds thereof is probable. The plaintiffs joined in this motion, as did two other creditors. Considering all of the circumstances, a reasonable court could find that the movants satisfied their burden to show that the property or fund was in danger of being lost, removed, or materially injured.
 {¶ 63} The various badges of fraud used to determine actual intent under R.C. 1136.04(B)(1)-(11) can be considered in determining the need for an interim receiver. These include: transfer to an insider; debtor retaining control over the property after transfer; debtor threatened with lawsuit prior to transfer; and lack of reasonably equivalent value or consideration for the transfer.
 {¶ 64} In this case, there were claims of a fraudulent conveyance of the property to an insider allegedly in violation of Chapter 1336 and claims of a lack of consideration since the transaction was tax exempt. The transferor still retains control of the property and of the transferee. There were claims that appellants made the conveyance with actual intent to hinder or delay the lien holders.
 {¶ 65} Appellants admittedly made the conveyance to its subsidiary for merely stock after various affidavits for mechanic's liens were filed on the property. There are multiple claimants owed nearly $300,000 due to their improvement of this property. Appellants do not dispute that they are a closely-held family corporation, as opposed to a larger corporation with various shareholders whose voice through the board of directors would be displaced.
 {¶ 66} Evidence in an affidavit established that the property is worth between a half to one million dollars more than the mortgage on the property. Although there is considerable equity and although the property is admittedly income-producing, appellants still filed an unusual motion asking for foreclosure upon itself. Such filing by appellants leads appellees to conclude that appellants desire to clear the liens in foreclosure where the bank will take the property and sell it back to appellants lienfree. As appellees suggest, appellants' act of filing a consent to foreclosure and actively seeking a sheriff's sale helped to establish that the property is in danger under R.C. 2735.01(A).
 {¶ 67} Unlike the typical case where receivership is sought, the rights of the corporation are not so compelling when that closely-held corporation asks the court to foreclose upon the very property upon which the liens had been filed. Thus, even if resort to the catch-all provision in R.C 2735.01(F) must be had, appointment would not be a clear abuse of discretion in this case.
 {¶ 68} In conclusion, these cases are decided on a case by case basis. The facts here appear to be fairly distinctive. Due to the facts and circumstances existing herein, it is rational for appellees' to desire and the trial court to appoint an interim receiver who can manage the company to protect it from foreclosure until the trial on the merits is completed. Moreover, the receiver could then ensure that fair market value is received for the property if a sale is necessary. Here, there was convincing evidence upon which the trial court could determine that an interim receiver should be appointed to avoid the danger of loss, removal, or material injury to that property and in turn to protect the claims of the creditors seeking the appointment. As such, the trial court did not abuse its discretion in appointing an interim receiver under the unique circumstances in this case. This assignment of error is hereby overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 69} Appellants' third and final assignment of error provides:
 {¶ 70} "The trial court erred as a matter of law in appointing a receiver because defendant/appellee, the divito construction company maintains an adequate remedy at law; thereby negating the necessity for a receiver."
 {¶ 71} Appellants note that DiVito had previously sued appellants in a separate action. In that action, DiVito voluntarily dismissed after filing a cross-claim and third party complaint. Appellants argue that DiVito has an adequate remedy at law, a contractual remedy. Appellants then conclude that DiVito's dismissal in the other suit gives them unclean hands in this suit and bars them from seeking equitable relief such as receivership.
 {¶ 72} First, DiVito was not the only party who asked that a receiver be appointed. The plaintiffs' complaint asked for this remedy. Later, the plaintiffs' filed a memorandum in support of DiVito's motion thereby joining in the motion. Sergio DiPaolo and Source One also filed a brief in support of DiVito's motion.
 {¶ 73} Second, a party's hands do not become unclean because they voluntarily dismiss a suit just before a hearing on an alleged failure to prosecute. As DiVito notes, they were brought into this litigation as a defendant; they did not choose this forum.
 {¶ 74} Third, when Hoiles mentioned that a receiver should not be appointed if the claimant has a full and adequate remedy at law, they were analyzing appointment of a receiver under R.C. 2735.01(F), which directs the court to the historical usages of receivers. See Hoiles,
117 Ohio St. at syllabus. Here, the main theory for appointment is R.C. 2735.01(A). That is, there is an action by a creditor to subject property to his claim, the movant has a probable interest in the property, and it has been shown that there is a danger that the property may be lost, removed, or materially injured.
 {¶ 75} In any case, having an available remedy at law does not bar appointment of an interim receiver. The remedy at law through the contract action may only become adequate upon appointment of the receiver. Most claimants who seek appointment of a receiver under R.C. 2735.01(A) and who have a lien on the property also have an alternative breach of contract theory. If no receiver is appointed, there may be no remedy left. Or at least the liens may be erased due to consent to foreclosure. One can collect on a mechanic's lien regardless of the availability of a breach of contract action. See Ohio Const. Art. II Sec. 33; O.R.C. Chapter 1311.
 {¶ 76} In conclusion, the fact that one can attempt to recover for breach of contract does not bar appointment of an interim receiver under R.C. 2735.01(A) pending a suit for recovery on mechanic's liens. As such, this assignment of error is overruled.
 {¶ 77} For the foregoing reasons, the decision of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.