[Cite as *Canter v. Wolfe*, 2016-Ohio-5300.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| LISA M. CANTER | JUDGES: |
| | Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 15 CA 64 |
| DONALD G. WOLFE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  13 CV 743


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 8, 2016


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MICHAEL P. VASKO                      DALE M. MUSILLI
19 North High Street                  105 Sturges Avenue
Canal Winchester, Ohio  43110         Mansfield, Ohio  44903

*Wise, J.*

{¶1} Defendant-Appellant Donald G. Wolfe appeals from the decision of the Court of Common Pleas, Fairfield County, which granted a directed verdict in favor of Plaintiff-Appellee Lisa M. Canter on a counterclaim filed by appellant seeking return of a diamond ring he had given to appellee during their relationship. The relevant facts leading to this appeal are as follows:

{¶2} Appellee and appellant became involved in a romantic relationship in 2006. The two began cohabitating in approximately August 2007.

{¶3} In October 2008, appellant bought for appellee a 1.47 carat diamond ring, retailed at approximately $13,000.00, from JB Robinson Jewelers in the Eastland Mall. It appears undisputed the purchase was made in the engagement ring section of the jewelry store.

{¶4} The parties ended their relationship in August 2013.

{¶5} On September 5, 2013, appellee filed a partition and/or quiet title action in the Fairfield County Court of Common Pleas, regarding the house they had shared on Lithopolis Road in Carroll, Ohio.

{¶6} On November 1, 2013, appellant filed an answer and a counterclaim alleging (1) promissory estoppel as to an oral contract for the sale of the aforesaid real estate and (2) conversion of the aforesaid ring claimed to be given to appellee in contemplation of marriage.

{¶7} On October, 21, 2014, the Huntington National Bank ("HNB"), as mortgagee, joined as a party and filed an answer and cross-claim in reformation, seeking foreclosure. On July 2, 2015, HNB filed an amended answer, counterclaim, and cross-

claim. On August 20, 2015, the trial court granted summary judgment in favor of HNB on its counterclaim (against appellee) and its cross-claim (against appellant).

**{¶8}** The parties presently agree that the aforesaid events left one remaining matter for litigation, that being appellant's aforesaid second counterclaim concerning the ring, which proceeded to a bench trial on October 29, 2015.

**{¶9}** During the trial, at the conclusion of appellant's case, appellee moved for a directed verdict pursuant to Civ.R. 50(A). The trial court announced from the bench that a directed verdict was granted in appellee's favor, thus effectively ruling that appellee could keep the ring in question. In a final judgment entry issued on November 13, 2015, the trial court first concluded that the Statute of Frauds (R.C. 1335.05) was not applicable. The court then determined that because appellee had worn both an engagement ring and a wedding band during cohabitation, "their relationship was not of the traditional form," further noting that appellant gave her the rings years before the relationship ended. Finally, the court found that "[a]fter so many years in this unconventional relationship no reasonable person could have expected the rings to be returned when the relationship ended." Judgment Entry at 1.

**{¶10}** On December 11, 2015, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

**{¶11}** "I.     THE TRIAL COURT COMMITTED ERROR BY SUSTAINING PLAINTIFF APPELLEE'S MOTION FOR DIRECTED VERDICT PURSUANT TO OHIO RULE OF CIVIL PROCEDURE 50(A) AT THE END OF THE DEFENDANT APPELLANTS [SIC] CASE IN CHIEF.

{¶12} "II.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED THE PLAINTIFF APPELLEES [SIC] MOTION FOR DIRECTED VERDICT BECAUSE IT IS CONTRARY TO OHIO LAW ON CONDITIONAL GIFTS OF ENGAGEMENT RINGS IN CONTEMPLATION OF MARRIAGE AND IT IS ALSO TOTALLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS CASE.

{¶13} "III.     THE FACT THAT THE DONOR DEFENDANT APPELLANT PURCHASED AN ENGAGEMENT RING AND A WEDDING BAND WHICH HE GIFTED TO THE PLAINTIFF APPELLEE DOES NOT NEGATE THE PLAINTIFF APPELLEE'S OBLIGATION TO RETURN BOTH THE ENGAGEMENT RING AS WELL AS THE WEDDING/ENHANCER RING AS BOTH WERE GIFTS IN CONTEMPLATION OF MARRIAGE WHEN THE RELATIONSHIP IS TERMINATED AND NO MARRIAGE WAS ENTERED INTO BY THE PARTIES.

{¶14} "IV.     THERE WAS UNCONTROVERTED EVIDENCE BEFORE THE COURT WHICH IS WHOLLY INCONSISTENT WITH THE COURTS [SIC] FINDINGS THAT THE COURT WOULD IMPUTE THAT THE PARTIES HAD ENTERED INTO A MUTUAL ACQUIESCENCE AND UNDERSTANDING THAT THE ENGAGEMENT RING WAS NOT EXPECTED TO BE RETURNED AFTER THE TERMINATION OF THEIR FIVE YEAR ENGAGEMENT.

{¶15} "V. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN SUSTAINING THE PLAINTIFFS MOTION FOR DIRECTED VERDICT WHEN THE EVIDENCE CONSTRUED MOST STRONGLY IN FAVOR OF DEFENDANT APPELLANT AND WHERE REASONABLE MINDS COULD COME TO MORE THAN ONE CONCLUSION AND ONE OF THE CONCLUSIONS WAS THE ENGAGEMENT

RING WAS GIVEN TO PLAINTIFF APPELLEE IN CONTEMPLATION OF MARRIAGE AND SINCE SHE NEVER MARRIED DEFENDANT APPELLANT THE RINGS SHOULD HAVE BEEN RETURNED TO THE DEFENDANT APPELLANT ABSENT ANY EVIDENCE OF ANY AGREEMENT TO THE CONTRARY THAT THE ENGAGEMENT RING AND THE WEDDING BAND/ENHANCER RING WERE NOT TO BE RETURNED TO DEFENDANT-APPELLANT ESPECIALLY AFTER HIS SPECIFIC REQUEST TO PLAINTIFF-APPELLEE TO RETURN THE RINGS TO HIM AND SINCE SHE DID NOT HE WAS SEEKING BY A [SIC] ORDER OF THE COURT FOR THEIR RETURN OR MONEY VALUE."

I., II., III., IV., V.

{¶16}  In his five Assignments of Error, appellant maintains on various grounds the trial court erred in granting a directed verdict in favor of appellee at the close of appellant's presentation of evidence on his counterclaim regarding the disputed ring. We disagree.

{¶17}  Civ.R. 50(A) states in pertinent part as follows: "*** A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence. *** When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue. ***."

{¶18}  However, we have recognized that in cases involving a bench trial, the rule governing directed verdicts is not applicable. *See, e.g., Williams v. Williams*, 5th Dist.

Morrow No. 2010-CA-0006, 2011-Ohio-1200, ¶13 (additional citations omitted). Instead, "[i]n a bench trial, a defendant seeking a favorable disposition after the close of the plaintiff's case must move to dismiss under the rule governing involuntary dismissal in non-jury actions." *Id.* Thus*,* "[t]he involuntary dismissal of non-jury actions comes *** within the scope of Civ.R. 41(B)(2), providing for a motion by the defendant for same upon completion of the presentation of the plaintiff's evidence, at which time the court, as trier of the facts, may weigh the plaintiff's evidence to determine whether the plaintiff has made out his case by a preponderance of other evidence." *Harper v. LTV Steel Co.*, 5th Dist. Stark No. CA-9149, 1993 WL 135473, (Apr. 19, 1993), quoting *Jackson v. Gossard* (1989), 48 Ohio App.3d 309, 311-312 (additional citation omitted).[1] In ruling under Civ.R. 41(B)(2), the trial court is not required to construe the evidence in favor of the non-moving party, but rather may weigh the evidence and render judgment. *See Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267.

{¶19} A trial court's ruling on a Civ.R. 41(B)(2) motion will be set aside on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence. *Mohn v. Ashland Cty. Chief Med. Examiner*, 5th Dist. Ashland No. 14-COA-031, 2015-Ohio-1985, 34 N.E.3d 137, 145, ¶ 29, citing *Ogan v. Ogan,* 122 Ohio App.3d 580, 702 N.E.2d 472 (12th Dist.1997). A reviewing court, in addressing a civil manifest weight challenge, must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the

---

[1] The trial court judge was clearly cognizant of this procedural issue, stating orally he would review the motion for directed verdict under the structure of Civ.R. 41(B)(2). *See* Tr. at 90.

judgment must be reversed and a new trial ordered. *See Hunter v. Green,* Coshocton App.No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25.

**{¶20}** In *Lyle v. Durham* (1984), 16 Ohio App.3d 1, 473 N.E.2d 1216, the First District Court of Appeals carefully reviewed the law with respect to ownership of engagement rings given in contemplation of marriage. The Court first summarized that "[t]he majority rule is that the engagement ring may be recovered by the donor if the engagement is broken by mutual agreement or by the donee without justification, but if the donor breaks off the engagement without justification, then he is not entitled to recover." *Id.*, citing Annotation, Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue (1972), 46 A.L.R.3d 578; 38 American Jurisprudence 2d (1968) 886, Gifts, Section 84. However, the question of "justification" in ending an engagement creates the dilemma of determining which party is at fault. *Id.*, citing Annotation, *supra,* 46 A.L.R.3d at 584. Thus, some states have taken the minority position "that the donor may recover the engagement ring without a determination of who broke off the engagement or who was at fault." *Id.*, citing *Albanese v. Indelicato* (1947), 25 N.J.Misc. 144, 51 A.2d 110. The First District Court ultimately agreed with the minority position and concluded that in the absence of an agreement between the parties to the contrary, the engagement ring must be returned to the donor upon termination of the engagement regardless of fault. *Id.*

**{¶21}** Our research reveals no specific citations in the Fifth District to the aforesaid rule of *Lyle*. However, in *Knotts v. Flynn*, 5th Dist. Tuscarawas No. 97AP060036, 1998 WL 172623 (Jan. 22, 1998), we cited the Tenth District's decision in *Sigrist v. Lyons* (1995), 100 Ohio App.3d 252, 653 N.E.2d 744, for the proposition that "where a gift is

given with a mutual understanding that the parties would be married and the gift would benefit the marriage, then if the parties do not marry, unjust enrichment requires the gift be returned." *Id.*, citing *Sigrist* at 254, (citations deleted).[2]

**{¶22}** In the case *sub judice,* appellant's case-in-chief on his counterclaim consisted of three witnesses: Appellee Lisa Canter called as if on cross-examination; appellant's sister, Dawn Coleman; and appellant himself. The record indicates appellee agreed that she wore the ring on the ring finger of her left hand. Tr. at 24. She testified that she almost always wore the ring, taking it off only at night. Tr. at 26-27. However, she denied ever discussing the topic of marriage with appellee. Tr. at 25. Appellee suggested that during their relationship, other expensive gifting was accomplished. For example, appellee also bought appellant a ring at one point. *Id.*

**{¶23}** Appellant's sister, Dawn, told the court she had first met appellee about five or six years earlier. At that meeting, appellant introduced appellee as "his fiancée." Tr. at 31. Dawn also recalled introducing appellant and appellee about two years before the trial, at a birthday party, as "her brother and his fiancée Lisa." Appellee did not correct her. Tr. at 31-32. Dawn observed that appellee wore the ring all the time, "usually" with the wedding band. Tr. at 32, 41. She also testified that she was part of several discussions where marriage was discussed, and at one point, appellant and appellee discussed getting married in Ireland. Tr. at 34-35. (In contrast, appellee had denied any talk of marriage, in Ireland or elsewhere. *See* Tr. at 20, 25.) According to Dawn, a prior owner had coincidentally installed a door plate at the shared residence with his last name, Wolfe,

---

[2]  The primary dispute in *Knotts* concerned a joint purchase of a residence.

inscribed thereon. Dawn recalled appellee telling her that "[t]hey wouldn't have to change the nameplate on the door." Tr. at 37.

{¶24} Finally, appellant's version of events was that he had asked appellee to get married at the time they picked out the ring, to which appellee responded "it's a heck of a time to have a proposal in a jewelry store." Tr. at 55. He opined that because both of them had had prior marriages, "we was kind of a little gun shy." Tr. at 66. Appellant claimed that he had once purchased tickets for Ireland, about five years ago. Tr. at 78. Nonetheless, the overall trial evidence was consistent that no formal public announcement was ever made of an engagement for marriage, nor did the parties set a wedding date or make concrete plans for a ceremony or reception, despite their long cohabitation.

{¶25} Upon review of the record, despite the conflicting testimony, we find no error as a matter of law in the trial court's interpretation of the gift of the ring as being outside the scope of an engagement, and we are not inclined to find the court's determinations under Civ.R. 41(B)(2) following appellant's case in chief were against the manifest weight of the evidence. The trial court therefore did not err in granting a directed verdict and/or 41(B)(2) dismissal in favor of appellee on appellant's counterclaim.

{¶26}  Appellant's First, Second, Third, Fourth, and Fifth Assignments of Error are overruled.

{¶27}  For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.


By: Wise, J.

Farmer, P. J., and

Baldwin, J., concur.


JWW/d 0722